# Toledo, St. Louis & Western Railroad Company v. Thomas H. Smart, Administrator, etc.

1. SPEED OF TRAIN—*how question of, as constituting negligence, determined.* In the absence of statute or ordinance, whether the passing of a train through corporate limits at a particular rate of speed is negligence, is a question of fact for the jury.

2. SPEED OF TRAIN—*rule with respect to.* In the absence of a statute or ordinance, a railroad company has the undoubted right to establish the speed of its trains, but, under the rules of the common-law, a railroad company is required to exercise its franchise with due regard to the

safety of its passengers, and such persons as may travel upon the highway crossing railroad tracks, and in establishing the rate of speed that their trains may be run, due regard must be had not only to the safety of passengers but also to the safety of all persons, in the exercise of ordinary care, traveling on the highways over and across railroad tracks.

3. ORDINARY CARE—*effect of infirmities upon obligation to exercise.* The fact that the plaintiff's intestate was hard of hearing and short-sighted increases his obligation to be watchful while passing over railroad tracks.

4. MEASURE OF DAMAGES—*when instruction upon, is erroneous.* An instruction upon this subject which permits the jury to assess such damages against the defendant as they think just and right, upon a full consideration of all the evidence, is erroneous, inasmuch as such an instruction should have been restricted to a fair and just compensation with reference to the pecuniary damages resulting from the death of the deceased to his next of kin.

5. PROXIMATE CAUSE—*how question of, to be determined.* Whether or not the negligence of the defendant was the proximate cause of the death of the plaintiff's intestate is ordinarily a question of fact for the jury.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Shelby County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the May term, 1904. Reversed and remanded. Opinion filed October 14, 1904.

CHARLES A. SCHMETTAU and WALTER C. HEADEN, for appellant; CLARENCE BROWN, of counsel.

W. C. KELLEY and WILLIAM H. RAGAN, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case brought by appellee against appellant for the recovery of damages for causing the death of appellee's intestate, Allen T. Smart, who was killed by one of appellant's trains, at the intersection of East street and appellant's right of way in the village of Herrick, Shelby county, Illinois. A trial of the cause resulted in a judgment for appellee for $1,250, from which the defendant appeals.

The declaration consists of three counts, the first alleging the defendant's failure to give the statutory signals by bell or whistle; the second, excessive speed, obstruction of view

of the track, and failure to give the statutory signals; and the third, general negligence in the operation of appellant's train. At the close of all the evidence the defendant moved the court to instruct the jury to return a verdict of not guilty, which motion was overruled.

The deceased, Allen T. Smart, was killed between one and two o'clock P. M., on March 18, 1901, while walking north over the crossing of appellant's railroad and East street, being struck by a train on appellant's road and instantly killed. Herrick is a village containing about 125 houses, with a population of 500 to 600. Three tracks of the appellant's railroad run through the village from east to west. Of these, the farthest north is the main track, the next the passing track, used for the passing of trains meeting at this point, and the farthest south, the house track, used for the storage and handling of cars for local business. The two side tracks connect with the main track near the east and west limits of the village, and all three tracks are parallel and straight through the village. East street, where the accident occurred, crosses these tracks at right angles at the extreme eastern limit of the village, running due north of the crossing of Broadway, the main village street, 600 feet west of East street. The main part of the village is grouped around the Broadway crossing, most of the business houses being located in Broadway. Miller's mill is located on East street at an elevation of about three feet, some forty feet south of the tracks and east of the street. The street rises from the track, south, to the mill, the depth of the cut near the crossing being from three to three and a half feet. At the time of the accident there were several buildings, south of the track, between East street and Broadway.

Smart was an elderly man, hard of hearing and to some extent short-sighted. He had been afflicted with these infirmities for several years and was aware of them. He had lived at Herrick for a number of years and was familiar with the East street crossing and its surroundings. Just prior to the accident he had purchased a sack of meal at

Miller's mill, after which he left the mill with the meal on his left shoulder and walked at a moderate gait down to the crossing. As he stepped on the main track he was struck by an east-bound freight train of appellant, and instantly killed.

The errors assigned for reversal are the refusal of the court to give the peremptory instruction offered by' appellant; the giving and refusal of divers other instructions; the overruling of a motion for a new trial, and that the verdict was against the greater weight of the evidence.

No evidence was offered of any negligence in the management of the train other than as to the alleged excessive speed and failure to give the statutory signals. The evidence upon the question as to whether the statutory signals were given is exceedingly close and conflicting. Fourteen witnesses testified upon this issue, all of whom stated that the train whistled when west of town, just beyond the city limits; four testified that it whistled again when from 150 to 175 feet west of the mill, and five that the bell was ringing at the time the train passed the depot. One of them testified that the bell continued ringing from that point until the train struck the deceased, and another that it was ringing just before and at that time. Seven out of the fourteen testified that they heard no signals excepting those given by the whistle, and but one of them stated positively that the train gave no signals after the first whistle.

The cause of action set out in the second count of the declaration is predicated upon the negligence of appellant in driving its train at an excessive rate of speed coupled with the failure to give statutory signals. The speed of the train in question at the time of the accident is shown to have been at the rate of from thirty to thirty-five miles an hour. Appellant insists that that rate is not excessive in a village of the size of Herrick. Whether the rate of speed was such as, under all the circumstances in evidence, constituted negligence, was a question of fact for the determination of the jury. Ry. Co. v. Raymond, 148 Ill.

249. It was therefore essential and imperative that the jury should have been accurately instructed as to the duty of appellant with regard to the speed of its train while crossing the street or highway in question.

The eighth instruction given on behalf of the appellee was as follows:

" The court instructs the jury, that it is the duty of a railroad company whose road runs through a city or village, to run its trains while in the city or village at such rate of speed as to have them under control, so as to be able to avoid injury to persons or property, though there is no ordinance of such city or village on the subject, and if it fails to do so, it will be guilty of negligence."

The true rule governing the speed at which a railroad company is permitted to operate its trains within corporate limits, in the absence of a statute or ordinance, was laid down by the Supreme Court in the case of Partlow v. Illinois Central Railroad Company, 150 Ill. 321, as follows: " In the absence of a statute or ordinance, a railroad company has the undoubted right to establish the speed of its trains; but, under the rules of the common law, a railroad company is required to exercise its franchise with due regard to the safety of its passengers, and such persons as may travel on the highway crossing railroad tracks; and in establishing the rate of speed that their trains may be run, due regard must be had not only to the safety of passengers, but also to the safety of all persons, in the exercise of ordinary care, traveling on the highways over and across railroad tracks."

In Overtoom v. R. R. Co., 181 Ill. 326, it was held that whether the speed of the train running over a public crossing is unreasonably fast and unsafe depends in a great degree upon the extent and frequency of the use of a crossing by the public; that a railroad company being charged with knowledge of the extent of the use of the street by the public, and the consequent danger of running its train over the same at a high and unusual rate of speed, is bound to regulate such speed with due regard to the safety of those having occasion to use the same.

The instruction was erroneous for the reason that under the rule therein stated, a railroad company is made the insurer of the safety of a person upon its tracks, within the city or village limits, without reference to the degree of care exercised by such person or his right to be on such tracks. If this were the law it would be only necessary in the case at bar to prove that the deceased was struck by a train within the village limits.

·It was also a close question, under the evidence, whether the deceased was in the exercise of due care at the time he was killed. Three witnesses called by appellant testified that as he left the mill and approached the crossing and track, he was looking either north or down toward the ground, and that he at no time looked in the direction of the approaching train. One of them, one Frailey, testified that he was just behind deceased at the time; that he, witness, heard and saw the approaching train; that he "hollered" at deceased, who paid no attention to him, but deliberately stepped on the main track ahead of the train and was struck by it.

As we have said, it appears from the record that Smart was hard of hearing and, to some extent, short-sighted; that he had suffered from these physical infirmities for some years prior to the accident, and was fully aware of his deficiencies in this respect. Such infirmities but increased his duty of watchfulness and rendered extra precautions necessary on his part for his safety. Thompson on Negligence, section 1465.

While we are not prepared to hold as a matter of law that the deceased was guilty of contributory negligence, or that the evidence did not warrant the jury in finding that appellant was guilty of the negligence charged, we are of opinion that in view of the closeness of and conflict in the evidence upon these questions, the giving of the eighth instruction was so prejudicial as to necessitate a reversal of the judgment.

Appellee's sixth instruction was erroneous in that it directed the jury, in case they found for the plaintiff, to

assess such damages against the defendant as they thought just and right upon a full consideration of all the evidence. The instruction stated the rule too broadly. It should have restricted the damages to a fair and just compensation, with reference to the pecuniary injuries resulting from the death of the deceased, to his next of kin. No other damages are recoverable under the statute. The instruction could not, however, have injured appellant, inasmuch as no complaint is made in argument, nor is it assigned as error, that the verdict is excessive.

The rule laid down in appellant's twentieth and twenty-first refused instructions was, we think, sufficiently stated in its eighteenth and nineteenth given instructions.

Appellant's twenty-fourth and twenty-fifth instructions were properly refused. Whether or not the negligence of the defendant was the proximate cause of the death was, under the evidence, a question for the jury. True v. Woda, 201 Ill. 315.

For the reasons indicated the judgment must be reversed and the cause remanded.

*Reversed and remanded.*